IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

        vs.               Case No. 11-10066-JTM

VIRGIL E. DILLON,

        Defendant.

MEMORANDUM AND ORDER

The defendant Virgil E. Dillon, an inmate in the Kansas state prison system, was charged in the Indictment with seven counts of sending threatening communications in violation of 18 U.S.C. § 876(c). By the agreement of the parties, the matter was tried to the court. The court makes the following findings of fact as established beyond a reasonable doubt.

The government produced the testimony of the Honorable Benjamin Burgess, who is employed as a Kansas State Judge. Prior to receiving a letter at his office from Dillon in 2009, Judge Burgess had presided over some hearings in which Dillon was a defendant. The envelope was addressed to Ben Burgess at 525 N. Main in Wichita, the location of the Sedgwick County judicial center. Among other things, the letter stated:

> I.ve Somthing to tell you how much do you love your family because It.s to Bad that I.m going to kill you + your family Real Slow.

(Exh. 1).

Judge Burgess testified that he knew at the time that Dillon was in custody, but was concerned because most prison inmates are eventually released. His concern was heightened because of the threat to his family.

Robert Clark is a Sedgwick County Sheriff's Office deputy assigned to the judicial division. In 2009, he was assigned to courtroom security and was asked by one of the judges to investigate another letter received from Dillon. Clark opened an investigation, but had no direct dealings with Dillon, as the matter was investigated by other detectives. In December of that year he received a letter from Dillon, which was addressed to Robert L. Clark at 525 No. Main. The letter stated in part:

> This Is To Tell You Somthing That I'm going to Kill You + Your Familys This is you Chirstmas & New Year gift from me This will make me happy to see all of you Dead and It wouldn't hurt my Feelings at all

(Exh. 2). Clark subsequently received another letter, postmarked January 18, 2011, which made similar threats against both Clark and his family.  (Exh. 4.)

David Kaufman is a Kansas State Judge, and during the Fall of 2009 had presided over a guilty plea by Dillon and later imposed sentence. Dillon subsequently sent Kaufman a letter, addressed to 525 N. Main, which stated in part

> This is a Killing List and your familys if you see your name means you going to be killed.

(Exh. 3).  Kaufman considered the threat to be a true threat.

Charles Pritchett is a Special Agent with Federal Bureau of Investigation. Pritchett, who is a federal law enforcement officer, opened a letter from Dillon postmarked January 31, 2011 which was addressed to FBI at 301 N. Main in Wichita, with a return address marked Kansas Department of Corrections. The letter stated in part:

2

I was told That You was going to File Federal charges on me You had a cop come to talk to me You talk a lot but I don't see anything you done yet what are you going charge me with I.m waiting for you make your move I hope you know that you all going to be killed and your familys will join you

(Exh. 5)

Kim Myers investigated another letter sent to a state court judge, which was later referred for prosecution. Myers interviewed Dillon, who was later convicted for sending the letter. Myers received a letter addressed to himself at 525 N. Main. The letter stated in part:

To Whom it concern Det Tim Myers This is to let you know That I.m going to kill you and your family I hope you can get some help Because you might Need a Safe Place for They can keep me away from all of you

(Exh. 6).

Stephanie Sexton is an investigator for the United States Postal Service and a federal law enforcement officer. She interviewed Dillon in prison for prior letters sent by him. Sexton testified that all of the letters introduced into evidence in the present action were mailed through Postal Service. She testified that during the interview, Dillon admitted to sending the letters. Sexton later received her own letter from Dillon, stating in part

To Whom it concern Stephanie L. Sexton

What do you Think your doing something Big for I willn't Tell you That I.m going to kill you and your family

(Exh 7).

As alleged here, the crime of mailing a threatening communication requires proof that the defendant knowingly mailed a threat to injury someone. *United States v. Wolff*, 370 Fed. Appx. 888 (10th Cir. 2010). True threats of violence or physical injury receive no constitutional protection. *Virginia v. Black*, 538 U.S. 343 (2003).

3

All of the witnesses for the government testified credibly, and their testimony supports the determination that Dillon is guilty beyond a reasonable doubt of each of the charged offenses. As the court announced at the conclusion of the trial, a reasonable recipient of each of the letters would have considered them to contain a threat "to injure the person of the addressee or of another" within the meaning of 18 U.S.C. § 876. The evidence also establishes, beyond a reasonable doubt, that the defendant knowingly mailed, or caused to be mailed, each of the letters introduced into evidence.

In making this determination, the court serving as finder of fact considered all of the potentially relevant circumstances of the case. The fact of the defendant's incarceration is not in itself a defense to the charged crime.

> It is not necessary to show that defendant intended to carry out the threat, nor is it necessary to prove he had the apparent ability to carry out the threat. *The question is whether those who hear or read the threat reasonably consider that an actual threat has been made*. It is the making of the threat and not the intention to carry out the threat that violates the law.

*United States v. Viefhaus*, 168 F.3d 392, 395-96 (10th Cir. 1999) (emphasis in *Viefhaus*). *See United States v. Pinson*, 542 F.3d 822, 832 (10th Cir. 2008) (observing, in connection with a charge of threatening the President under 18 U.S.C. § 871, that "a threat violates the law even if the defendant had no actual intention, or even ability, to carry it out. If the school bully tells his victim to give him his lunch money or he will give him a black eye, these words are a threat even if the bully is bluffing").

However, while it is not a complete defense, the fact of imprisonment remains a relevant consideration. In *United States v. Davila*, 461 F.3d 298 (2nd Cir. 2006), the court rejected the defendant's argument that his letter containing white powder could not be deemed a threat because its prison origin was clearly marked.

4

Davila contends that a reasonable recipient could not have taken his letter seriously because it was marked as having been sent by a prison inmate. While *this is one factor to consider in determining whether a threat is credible*, it does not deserve the weight Davila urges us to assign it. A recipient of a letter such as Davila's could reasonably believe that the sender had obtained access to anthrax or some other dangerous substance, or that he could cause an associate to send it.

(Citation omitted, emphasis added).

Similarly, the Sixth Circuit in *United States v. Miller*, 115 F.3d 361, 364 (6th Cir. 1997) rejected an argument by the defendant prisoner that his communication could not be a true threat against the President.

[T]he author's imprisonment does not automatically transmute a facially threatening letter into an innocuous prank. Manifestly, an incarcerated individual who may be associated with a radical political organization, a lunatic fringe element, or any other criminally inclined gang or other affiliation may pose a significant risk of igniting or inspiring criminal activity outside the institution. Indeed, a prosecutable threatening communication need not be supported either by evidence of the author's actual ability to carry out his threat, or his actual subjective intent to do so. Rather, if a reasonable person would foresee that an objective rational recipient of the statement would interpret its language to constitute a serious expression of intent to harm, kidnap, or kill the President or other statutorily protected target, that message conveys a "true threat."

A reasonable person would foresee that the letter in controversy would be construed, and investigated, by the authorities as a potentially serious threat against the lives or safety of the President and Vice President. The writing menacingly suggested its author's motives for inflicting injury upon the President and the Vice President, pointedly asserted that his claimed associates outside the prison would carry out the threatened assassinations, and confidently proclaimed his perceived immunity from prosecution by virtue of his incarceration alibi. The manifest instability and irrationality of the perpetrator of these menaces did not objectively diminish the letter's credibility but instead predictably heightened apprehension by its recipients that the author could be sufficiently imbalanced to seek the realization of his proclamations. The lower court correctly rejected Miller's motions for acquittal and properly submitted the "true threat" issue to the jury.

(Citations omitted). *See also United States v. Glover*, 846 F.2d 339 (6th Cir.1988) (prisoner's threats to President could be true threats, despite inability to carry them out, since reasonable person could see them as threatening); *United States v. Lincoln*, 589 F.2d 379, 381 (8th Cir.1979) (per curiam).

Accordingly, the fact of Dillon's incarceration is not a dispositive but relevant and appropriate consideration for the finder of fact. As the Tenth Circuit has stressed, "[c]ontext is important in determining whether a true threat has been made." *United States v. Magleby*, 241 F.3d 1306, 1319 (10th Cir. 2001) (citing *Viefhaus*, 168 F.3d at 397). The Tenth Circuit has emphasized that the fact finder should consider all of the circumstances which might be potentially relevant to the credibility of the threat, since the matter is "a fact-intensive inquiry, in which the language, the context in which the statements are made, as well as the recipients' responses are all relevant. *Nielander v. Board of County Com'rs*, 582 F.3d 1155, 1167-68 (10th Cri. 2009).

As noted earlier, the court finds that the letters introduced into evidence are true threats. The fact of Dillon's incarceration does little to diminish the clear threat of violence reflected in the letters. Given the possibility of Dillon's future release, or the possibility that he might act on his threats of violence through confederates, the defendant's present incarceration bears little weight in contrast to the blatant threats of lives against the lives of the addressees and their families.

As the court noted at the conclusion of the trial, the one allegation requiring further attention was Count 5, which is premised on the letter sent to the FBI. The letter itself uses no proper names, was addressed simply to the FBI, and makes no threat against any specific, named individual.

The fact that the letter does not name any particular *target* of violence is not fatal to the charge. As noted earlier, § 876(c) applies when the communication contains at threat "to injure the

person of the addressee or of another," and there is no requirement that the victim of the threat be particularly named.

As separate question is whether the letter was in fact "addressed to another person," within the meaning of the statute. In *United States v. Williams*, 376 F.3d 1048, 1053 (10th Cir. 2004), the court upheld the defendant's § 876 conviction for sending threatening letters addressed to the Colorado United States Attorney's Office and the Clerk of the Court, but which did not explicitly name any recipient. The court held that the "addressed to another person" statutory language meant any natural person, even if the person was a government official, given the statute's purpose of preventing threats to personal safety. "A government official," the court reasoned, " being a natural person, has such a sense of personal safety that can be threatened by the proscribed communication." *Id*.

The Tenth Circuit contrasted *United States v. Brownfield*, 130 F.Supp.2d 1177, 1183-84 (C.D. Cal. 2001), where the court dismissed an indictment alleging that the defendant sent a letter to the FBI stating that he would murder Moon Unit Zappa. *Brownfield* held that § 876 required a communication addressed to a natural person, not a government agency. The Tenth Circuit in *Williams* agreed that § 876 requires the addressee be a natural person rather than the agency itself, but held that a person sending a threatening communication to a government agency does not escape liability under § 876 by the mere expediency of omitting the recipient's proper name.

In determining whether the letter was addressed to a natural person, the court is not restricted to the face of the envelope, but may also take note of both the salutation and the contents of the letter. *Williams, 376* F.3d at 1052-1053. *See also United States v. Havelock*, ___ F.3d ___, 2012 WL 29347, *10 (9th Cir. Jan. 6, 2012) (in determining whether threatening letter is addressed to natural

person under § 876(c), court "may consult the directions on the outside of the envelope or the packaging, the salutation line, if any, and the contents of the communication"). The *Williams* court concluded that there was sufficient evidence to support the defendant's conviction, because the letters in question were either addressed to particular governmental officials, or contained salutations which could be inferred as being directed to a government official. *Id.* at 1054.

As in *Brownfield,* Count 5 alleges that Dillon sent a letter which was addressed simply to the "FBI." Further, the salutation of the letter merely states "[t]o whom it may concern." However, unlike *Brownfield*, the letter contained in the envelope does not include a threat to a celebrity otherwise unrelated to the FBI, but makes a series of death threats directly to the FBI agent receiving the letter. Specifically, the letter repeatedly threatens to kill "you" — that is, the recipient, the "[t]o whom it may concern" in the salutation.[1]

Further, the threats are not restricted to the recipient. Dillon wrote "I hope you know that you all going to be killed and your familys [sic] will join you," and that "I hope you can enjoy some time with your familys [sic]. It could be your last thing you ever do." Government agencies do not have families; natural persons do. The salutation and contents of the letter establish that the letter was not directed to the FBI as some amorphous entity, but to specific agents in Wichita, based upon specific

---

[1] The present case is also distinguishable from *Havelock*, where the Ninth Circuit held that a threatening Manifesto delivered to media companies was not a threat under § 876(c), emphasizing that the language of the Manifesto "indicates nothing at all about the identity of any individual 'person' to whom the communication supposedly was addressed." 2012 WL 29347 at *10. The *Havelock* Manifesto was completely devoid of any clues as to the intended recipient. Exhibit 5 is not. Dillon's letter was directed to a specific FBI office, was based upon the specific actions of individual FBI agents in that office (investigating Dillon's other letters), and threatened the lives of FBI agents and their children. Dillon cannot escape responsibility by the mere expediency of avoiding the use of proper names, *United States v. Williams*, 376 F.3d at 1053. His letter was addressed to a natural person within the meaning of § 876(c).

actions — their investigation of Dillon's history of threatening letters. The letter in context can only be construed as being addressed to a natural person, as only natural persons can be killed or have families subject to being killed.

IT IS ACCORDINGLY ORDERED this 31st day of January, 2012, that the defendant is found guilty beyond a reasonable doubt of Counts 1, 2, 3, 4, 5, 6, and 7 of the Superseding Indictment. The court also finds, with respect to Counts 5 and 7, that communications contained threats of violence against federal law enforcement officers.

s/J. Thomas Marten
J. THOMAS MARTEN, JUDGE

9